IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BRANDON M. CHAMBERS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-990-O |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## **OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Brandon M. Chambers, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## **I. BACKGROUND**

In September 2011 Petitioner was indicted in Tarrant County, Texas, Case No. 1247238D, for continuous sexual abuse of a child younger than 14 years of age. Adm. R., Clerk's R. 6, ECF No. 15-10. A jury convicted Petitioner of the offense on June 19, 2013, and the trial court assessed his punishment at 40 years confinement. *Id.* at 102. The state appellate court affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. *Id.*, Electronic R., ECF No. 15-15. Petitioner also filed a state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. *Id.,* Writ Rec'd 2-21, ECF No. 15-17; Resp't's

Answer 3, ECF No. 16.

The state appellate court briefly summarized the facts of the case as follows:

> Appellant, who was twenty-three years old, engaged in what he characterized as "consensual sexual contact" with an eleven-year-old girl over an extended period of time. Appellant confessed to repeated sexual contact and sexual intercourse with the child, both to the investigating detective as well as in open court when he testified before the jury and the trial court. His entire defense rested upon the representations that he never used force, threats, or duress against the child and that he was not a registered sex offender. He argued at trial and argues on appeal that these two facts met the test for the statutory affirmative defense under the specific language of the continuous sexual abuse statute.

Adm. R., Mem. Op. 2, ECF No. 15-3.

## II. ISSUES

In this federal petition, Petitioner raises six grounds for relief alleging trial court error (grounds one, two, and three) and ineffective assistance of trial counsel (ground four, five, and six). Pet. 6-7 & Attach., ECF No. 1.

## III. RULE 5 STATEMENT

Respondent believes that Petitioner has exhausted his state court remedies as to the claims raised and that the petition is neither barred by limitations nor subject to the successive-petition bar. Resp't's Answer 4, ECF No. 16.

## IV. DISCUSSION

### A. Legal Standard for Granting Habeas-Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United

States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102. Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Finally, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus application without written order, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States," unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams*, 568 U.S. 1088, 1094 (2013); *Harrington*, 562 U.S. at 99; *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004).

**B. Trial Court Error**

Under grounds one, two, and three, Petitioner claims that his rights to due process and equal protection of the law were violated by the trial court's failure to exercise its judicial power to adequately research and provide an accurate interpretation of Texas Penal Code § 21.02(g); the trial court's refusal to include in the jury charge an instruction on his affirmative defense under § 21.02(g); and the trial court's denial of his motion for a directed verdict. Pet. 6-7 & Attach., ECF No.

3

1. Relying solely on state law, the state appellate court overruled the last two claims as follows:

> Texas Penal Code section 21.02 provides,
>
> (b) A person commits an offense if:
> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse . . .; and
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.
>
> Subsection (g) of section 21.02 provides,
>
> It is an affirmative defense to prosecution under this section that the actor:
> (1) was not more than five years older than:
> (A) the victim of the offense, if the offense is alleged to have been committed against only one victim;
> . . .;
> (2) did not use duress, force, or a threat against a victim at the time of the commission of any of the acts of sexual abuse alleged as an element of the offense; ***and***
>
> **(3) at the time of the commission of any of the acts of sexual abuse alleged as an element of the offense:**
> **(A) was not required under Chapter 62, Code of Criminal Procedure, to register for life as a sex offender; or**
> **(B) was not a person who under Chapter 62 had a reportable conviction or adjudication for an offense under this section or an act of sexual abuse as described by Subsection (c).**
>
> Appellant requested a jury instruction on the affirmative defense provided in section 21.02(g). Upon his timely request, a defendant in a criminal case is entitled to an affirmative-defense instruction on every issue raised by the evidence. In his first point, Appellant argues that subsection (g) sets out two separate affirmative defenses: one in subsection (g)(1) based on the age difference between the actor and complainant, and a separate affirmative defense set out in subsection (g)(2) and (3) for when the actor did not use duress, force, or a threat against the complainant and was not at the time of the offense required to register as a sex offender. Appellant further argues that it was uncontroverted that he met the requirements of the affirmative defense that he claims is set out in subsection (g)(2) and (3) and that the trial court therefore erred by not instructing the jury on the affirmative defense.
>
> Appellant's reliance on section 21.02(g) is misplaced. The single affirmative defense provided by the statute has three components that must be met: the relative

4

ages; the absence of duress, force, or threat; and the absence of an obligation to register as a sex offender. These three components are set out in the conjunctive, not the disjunctive. As Appellant concedes and the record reflects, he was approximately twelve years older than the child. Because there is no evidence to satisfy the necessary element that his age not exceed the complainant's age by more than five years, the section 21.02(g) affirmative defense was not raised by the evidence. The section 21.02(g) affirmative defense was therefore not available to Appellant. Consequently, the trial court did not err by refusing to instruct the jury on the affirmative defense.

In his second point, Appellant contends that the trial court erred by denying his motion for instructed verdict. A challenge to the denial of a motion for instructed verdict is actually a challenge to the sufficiency of the evidence. The defendant has the burden of proving an affirmative defense by a preponderance of the evidence. Because there is no evidence to satisfy the requirement that Appellant's age not exceed the complainant's age by more than five years, he did not meet that burden. Accordingly, the trial court did not err by denying his motion for an instructed verdict.

Adm. R., Mem. Op. 2-5, ECF No. 15-3 (emphasis in original) (footnotes and citations omitted).

Petitioner's claim that the trial court erred or somehow violated his rights by seeking assistance from an "unqualified" staff attorney in interpreting the statute is frivolous. It is common for judges to study and consult with staff attorneys on questions of law. Further, the appellate court found that the trial court properly interpreted the statute and, thus, that Petitioner was not entitled to a jury instruction or an instructed verdict on the issue. A federal court does not sit to review the correctness of the state court's interpretation of state law. *Young v. Dretke,* 356 F.3d 616, 628 (5th Cir. 2004).

**C. Ineffective Assistance of Trial Counsel**

Under grounds four, five, and six, Petitioner claims he received ineffective assistance of trial counsel. Pet.7 & Attach., ECF No. 1. A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of

counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. The Supreme Court recently emphasized in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective-assistance-of-counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000) (emphasis in original)). Accordingly, it is necessary only to determine whether the state courts' adjudication of Petitioner's ineffective-assistance claims was contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

Petitioner claims his trial counsel was ineffective by failing "to thoroughly research case law

to give an accurate and supportive interpretation of" penal code § 21.02(g). Citing to Webster's Dictionary and various cases, Petitioner argued in his state habeas application, and now, that the use of a semicolon not joined by a conjunctive between subsection (g)(1) and subsections (g)(2) and (3) establishes that the affirmative defense in (g)(1) is separate and distinct from the one established by subsections (g)(2) and (3). Pet. 7 & Attach. 1-5, 8-10, ECF No. 1; Adm. R., Writ Rec'd 29-31, ECF No. 15-17. Applying the *Strickland* standard, the state habeas court found that because the appellate court determined that the three components of the statute "are set out in the conjunctive, and not the disjunctive," there was no reasonable likelihood that the outcome of the proceeding would have been different had counsel presented more argument or authority to support his claim. *Id.* at 44. The court concluded then that Petitioner had failed to prove that counsel should have presented more authority to support his argument. *Id.* at 48. Deferring to the state court's interpretation of the statute, the state court's adjudication of Petitioner's ineffective-assistance claim comports with *Strickland*.

Petitioner claims counsel was ineffective by failing to object to the trial court's exclusion of evidence of the victim's prior sexual conduct under rule 412(b)(2)(A) of the Texas Rules of Evidence and by failing to object to or contest the state's expert witness's false and inconsistent testimony regarding an additional genetic marker found in the DNA taken from the victim's underwear proving the "presence" of a third-party suspect in the case." Pet. Attach 7-8, ECF No. 1. DNA samples were taken from the victim's bed comforter and a pair of her underwear. The state's DNA analyst, Courtney Ferreira, testified on direct examination regarding the DNA sample taken from the victim's underwear as follows:

> From the sample taken from the underwear in the female epithelial cell fraction, the profile obtained was from a single female that matched the DNA profile of [the victim]. In the sperm cell fraction, the profile was a mixture of at least two

7

contributors that could not be resolved into a major and a minor contributor.

> All of the DNA -- all of the genetic markers in the profile of [the victim] were detected in that mixture. And after taking into account the known profile of [the victim], because she is a known contributor to those underwear, the DNA profile of the second contributor could be determined.
>
> The DNA profile of that second contributor was from a single male and matched the DNA profile of Brandon Chambers.
>
> *And additionally, there was another genetic marker detected at a much lower level that did not correspond to either [the victim] or Brandon Chambers.*

Adm. R., RR 3 of 6, 180-81, ECF No. 15-6 (emphasis added).

Ferreira explained the presence of the additional genetic marker as follows:

> It can mean multiple things. At times in our profiles, we have much lower level, trace level, genetic markers that might show up at times, and at other times it might not show up.
>
> It might show up in a person's buccal swab, but it might not show up in a sample taken from their vaginal vault. So it's *not uncommon* that at times we find additional genetic markers that don't show up in a person's profile.

*Id.* at 183 (emphasis added).

The following colloquy occurred:

Q. So is it your opinion that there is a third person's genetic profile here, or are you able to reach that opinion based on what you have?

A. No. Overall, looking at the entire DNA profile, it only appeared to be a mixture of two individuals.

*Id.* at 183-84.

On cross-examination, defense further questioned Ferreira:

Q. Are there two or are there three contributors in the underwear sample, for lack of a better way to put it?

A. Looking at the overall profile, it appears that there were only two contributors

8

> to that profile. There was an additional genetic marker, but looking at the overall profile, I would say that there were only two contributors.
>
> Q. And this additional genetic marker doesn't correspond to either [the victim] or Brandon; is that what you're saying?
>
> A. Yes. That was not observed in their DNA profile.
>
> Q. Ok. But you don't know whose marker it does correspond to?
>
> A. No.

*Id.* at 188-89.

On re-direct, Ferreira again clarified for the jury that she did not feel that the results showed that there was a third person's DNA profile in the samples where she found the addition genetic marker. *Id.* at 195.

The state habeas court entered the following findings on the issue:

> 13. The single additional genetic mark was found "at trace or much lower level."
>
> 14. Courtney Ferriera ("Ferriera) testified that it was not uncommon to find additional genetic markers at the trace levels but that the marker was not scientifically significant.
>
> 15. Counsel properly cross-examined Ferriera regarding the additional genetic marker and what it meant scientifically.
>
> 16. Ferriera's testimony regarding the additional genetic marker found in the sample and what it meant scientifically was not a false or inconsistent statement.
>
> 17. There is no reasonable likelihood that the outcome of the proceeding would have been different had counsel objected or contested Ferriera's testimony.
>
> 18. Applicant argues that the child victim's prior sexual conduct was admissible to explain the additional genetic marker in the DNA sample.
>
> 19. Evidence of the child victim's prior sexual conduct was not necessary to explain the additional genetic marker because the additional genetic marker

9

>    was not scientifically significant and sufficiently explained by Ferriera's testimony.
>
> 20. This Court would have not granted Applicant's request to present evidence of the child victim's prior sexual conduct to rebut or explain scientific or medical evidence offered by the State.
>
> 21. There is no reasonable likelihood that the outcome of the proceeding would have been different had counsel argued that the prior sexual conduct of the victim was admissible to explain the additional genetic marker in the DNA sample.

Adm. R., Writ Rec'd 44-45, ECF No. 15-17.

Based on its findings, the state court concluded that Petitioner had failed to show that there was a reasonable probability that the outcome of his trial would have been different had counsel objected or contested Ferriera's testimony or argued that evidence of the child victim's prior sexual conduct was necessary to rebut or explain the additional genetic marker. *Id.* at 49. In turn, the Texas Court of Criminal Appeals denied habeas relief based on the trial court's findings. Petitioner fails to rebut the presumptive correctness of the state courts' factual findings with clear and convincing evidence or demonstrate that the state courts' application of *Strickland* was objectively unreasonable. Given the overwhelming evidence of Petitioner's guilt, including his admission to having sexual contact and sexual intercourse with the 11-year-old victim on numerous occasions, there is no reasonable probability that counsel's representation or the omitted evidence of the victim's prior sexual conduct would have changed the jury's verdict. *Strickland*, 466 U.S. at 700.

## VI. CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, for the reasons discussed, a certificate of appealability is **DENIED** as Petitioner has not made a showing that reasonable jurists would question this Court's

resolution of Petitioner's claims.

**SO ORDERED** on this 14th day of September, 2017.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**